UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'   JS-6

| Case No. | 2:19-cv-4912-CAS-Ex | Date | September 16, 2020 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. SAM ZIMMERMAN, ET AL. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Not Present      Not Present

**Proceedings:** (IN CHAMBERS) - UNITED STATES OF AMERICA'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS SAM AND AMY ZIMMERMAN (Dkt. 27, filed on August 3, 2020)

## I. INTRODUCTION AND BACKGROUND

This case involves the failure to report an offshore bank account to the Internal Revenue Service ("IRS"). Any U.S. person having a financial interest in, or authority over, a foreign bank account must report that relationship, each year it exists, in a Report of Foreign Bank and Financial Accounts ("FBAR"). See 31 U.S.C. § 5314; 31 C.F.R. § 1010.350(a). The Secretary of the Treasury may impose civil penalties for a failure to file an FBAR. See 31 U.S.C. §§ 5321(a)(5)(A), (b)(2).

Defendants Amy and Sam Zimmerman[1] are U.S. citizens who use U.S. passports exclusively. Dkt. 1, Complaint ("Compl.") ¶¶ 10–11. In 1994, Amy deposited about $300,000 into an account at Bank Leumi in Israel ("Leumi Account"). Id. ¶¶ 14–15. Amy controlled the Leumi Account. Dkt. 27, Motion for Default Judgment ("Mot.") at 3. In 2006, 2007 and 2009 the Zimmermans filed FBARs for years 2004, 2006 and 2008, respectively, in which they reported the Leumi Account. Compl. ¶¶ 16–18. They closed the account in 2009. Id. ¶ 19.

Also in 1994, the Zimmermans, while traveling in Switzerland, established a foundation, Makuba Siftung ("Makuba"). Id. ¶ 22. Makuba maintained at least one account at BSI Bank, in Switzerland ("BSI Account"), of which both Zimmermans were authorized representatives. Id. ¶¶ 23–26. In November 2009, the Zimmermans directed

---

[1] Because the defendants share a surname, the Court occasionally and respectfully refers to each by their first name.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-4912-CAS-Ex | Date | September 16, 2020 |
| Title | UNITED STATES OF AMERICA v. SAM ZIMMERMAN, ET AL. | | |

that Makuba be dissolved and the BSI Account be closed, but it was not until January 2010, that the foundation was dissolved and the account closed. Id. ¶¶ 27–28. The BSI Account had, at its peak in January 2010, the equivalent of $5,786,949. Id. ¶ 30. Critical to the counts alleged here, the Zimmermans did not file an FBAR for 2010. Id. ¶ 35.

The Zimmermans prepared their own individual tax returns for 2010. Id. ¶ 31. Schedule B of their return asked whether, "[a]t any time during 2010, … [they had] an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account," to which the Zimmermans responded, "No." Id. ¶¶ 32–33.

On June 6, 2017, the IRS timely assessed one FBAR penalty of $100,000 against Amy, and one against Sam, for failing to report the BSI Account in 2010. Id. ¶¶ 34–37, 39, 43.

On June 5, 2019, plaintiff United States of America ("United States" or "government") filed this action against defendants. See id. The government alleged claims to reduce to judgment the FBAR penalties assessed against both Zimmermans. Id. ¶¶ 39–46. On August 28, 2019, the Court entered an order granting the government's Ex Parte Application to Extend Time to Serve Complaint under Federal Rule of Civil Procedure 4(m) to December 2, 2019. See Dkt. 11.

On December 3, 2019, the Court entered an order granting the government's Ex Parte Application to Authorize Service by Certified Mail and Email on Unserved Defendants Sam and Amy Zimmerman.[2] See Dkt. 15. On December 4, 2019, the Zimmermans were served by email and by certified mail at their PO box at Ship and Move Sahara, in Las Vegas, NV; they were served with (1) the complaint, (2) the summons, (3) a notice to counsel, and (4) the Court's December 3, 2019 order. Mot. at 1; see Dkt. 16. Pursuant to Rule 12(a)(1)(A)(i) of the Federal Rules of Civil Procedure, and the language contained in the Court's December 3, 2019 order, defendants then had 21 days from the date the government served them by email to answer or otherwise respond to the complaint.

---

[2] On December 16, 2019, the Court entered an order granting the government's Ex Parte Application to Extend Time to Serve Complaint under Federal Rule of Civil Procedure 4(m) until March 6, 2020. See Dkt. 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-4912-CAS-Ex | Date | September 16, 2020 |
| Title | UNITED STATES OF AMERICA v. SAM ZIMMERMAN, ET AL. | | |

On December 16, 2019, the government filed a notice of proof of this service.[3] See Dkt. 16.

On April 21, 2020, the government filed an application for the Clerk to enter default against defendants, see Dkt. 23; and on April 23, 2020, the Clerk of the court entered default as to both Amy and Sam Zimmerman, see Dkt. 25.

On August 3, 2020, the government filed a motion for default judgment against both defendants. See Mot. In support of its motion, the government submitted declarations prepared by Assistant U.S. Attorney Jolene Tanner ("Tanner Decl."), and Nancy Beasley of the IRS ("Beasley Decl."). See id. The government served the motion on both defendants that day. Id. at 31. On August 25, 2020, the government again served the Zimmermans with notice of the motion, including information necessary to attend the call-in hearing, as requested by the Court. See Dkts. 28, 29.

The Court held a hearing on August 31, 2020, and defendants failed to appear. The Court requested additional briefing on the question of the Zimmermans' willfulness, see Dkt. 31, which the government filed on September 14, 2020, see Dkt. 32 ("Supp. Brief"). The supplemental brief was supported in part by the Declaration of Christina Rikke ("Rikke Decl."). See Dkt. 32-2.

In its supplemental briefing, the government provided evidence that the BSI Account was a "numbered account," which therefore did not identify the Zimmermans by name. Supp. Brief at 4; Rikke Decl. ¶ 29. The Zimmermans also placed a "stop mail" hold on the account, which prevented any mail regarding the account from being sent to them in the United States. Id. Furthermore, the IRS interviewed the Zimmermans on August 10, 2016, and October 13, 2016. Supp. Brief at 4; Rikke Decl. ¶ 3. When asked about their foreign financial interests, the Zimmermans disclosed the Leumi Account, but did not disclose the BSI Account.[4] Supp. Brief at 4; Rikke Decl. ¶¶ 33–34.

---

[3] On April 10, 2020, the government refiled the proof of service under the correct event code, reflecting compliance with the Court's December 3, 2019 order authorizing substituted service. See Dkt. 22.

[4] Although the government does not specify whether the IRS inquired about foreign financial interests predating the closure of the BSI Account, the Court assumes it did because, if not, the omissions would be irrelevant to the question of concealment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-4912-CAS-Ex | Date | September 16, 2020 |
| Title | UNITED STATES OF AMERICA v. SAM ZIMMERMAN, ET AL. | | |

Having carefully reviewed the motion and briefing, and the government's supporting declarations and exhibits, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the plaintiff does not seek a sum certain, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55. As a general rule, cases should be decided on the merits as opposed to by default, and therefore, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). Granting or denying a motion for default judgment is a matter within the court's discretion. Elektra Entm't Grp., Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005).

The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong policy favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986); see also Elektra, 226 F.R.D. at 392.

Beyond the substantive requirements, "[b]efore a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rules 55-1 and 55-2." Harman Int'l Indus., Inc. v. Pro Sound Gear, Inc., No. 2:17-cv-06650-ODW-FFM, 2018 WL 1989518, at *1 (C.D. Cal. Apr. 24, 2018). Accordingly, when an applicant seeks a default judgment from the Court, the movant must submit a declaration specifying: "(a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Servicemembers Civil Relief Act (50

---

Regardless, while these omissions are compelling evidence of concealment, they are not necessary to make the inference of willfulness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-4912-CAS-Ex | Date | September 16, 2020 |
| Title | UNITED STATES OF AMERICA v. SAM ZIMMERMAN, ET AL. | | |

U.S.C. App. § 521) does not apply; and (e) That notice has been served on the defaulting party, if required by [Federal Rule of Civil Procedure] 55(b)(2)." C.D. Cal. L.R. 55-1.

## III.   DISCUSSION

The government seeks default judgment against defendants for a combined sum of $244,071.24 (which includes accrued interest and late-payment penalties through July 29, 2020), plus interest accruing after July 29, 2020. Mot. at 9. In connection with the government's request for entry of default judgment against the Zimmermans, the government submitted declarations attesting that: (a) on April 23, 2020, the Clerk entered default against the Zimmermans following their failure to respond to either the summons or complaint, (b) neither Zimmerman is an infant nor an incompetent person; and (c) the Servicemembers' Civil Relief Act applies to neither defendant. Tanner Decl. ¶¶ 2–5. In addition, the government has served notice of the motion on the Zimmermans. Accordingly, the government has satisfied the procedural requirements for entry of default judgment. See C.D. Cal. L.R. 55-1, 55-2. The Court therefore turns to the merits of the government's motion.

### A.   Application of Eitel Factors

#### 1.   Risk of Prejudice to Plaintiff

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); see also Eitel, 782 F.2d at 1471–72. The government contends that, notwithstanding its attempts to give defendants notice, defendants have failed to either serve a response within the time allowed by law or seek additional time to respond. Mot. at 1. Given defendants' failure to litigate this case, the government "will likely be without other recourse for recovery" if default judgment is not entered. Pepsi, 238 F. Supp. 2d at 1177. Accordingly, the first Eitel factor weighs in favor of entering default judgment.

#### 2.   Sufficiency of the Complaint and the Likelihood of Success on the Merits

Courts often consider the second and third Eitel factors together. See PepsiCo, 238 F. Supp. 2d at 1175; HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 941 (D. Ariz. 2013). The second and third Eitel factors assess the substantive merits of the movant's claims and the sufficiency of its pleadings, which "require that a [movant] state a claim on which [it] may recover." PepsiCo, 238 F. Supp. 2d at 1177 (quotation omitted); see also Danning v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-4912-CAS-Ex | Date | September 16, 2020 |
| Title | UNITED STATES OF AMERICA v. SAM ZIMMERMAN, ET AL. | | |

Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that the issue is whether the allegations in the pleading state a claim upon which plaintiff can recover). The government's complaint alleges one claim against each defendant: namely, that the FBAR penalties be reduced to judgment. Compl. ¶¶ 39–46. Furthermore, the government alleges that the violations were willful, which increases the maximum penalty. See Compl. ¶ 38.

Turning to the underlying charges against the Zimmermans, the implementing regulations of 31 U.S.C. § 5314 ("Section 5314") require, in pertinent part, that "[e]ach United States person having a financial interest in, or signature or other authority over, a bank … account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year such relationship exists[.]" 31 C.F.R. § 1010.350(a); 31 C.F.R. 1010.306(c). This information must be reported in an FBAR. 31 C.F.R. § 1010.350(a). The Secretary of the Treasury may impose civil penalties against anyone who violates Section 5314. 31 U.S.C. § 5321(a)(5)(A). Relevant here, the owner of a foreign account exceeding $10,000 violates Section 5314 when he or she fails to report the account by June 30 of the year following the calendar year in which the account is held. 31 C.F.R. § 1010.306(c). An FBAR penalty must be assessed within six years after the date of the violation, and then the government has two years after the IRS assesses a penalty to bring suit to recover the penalty. 31 U.S.C. §§ 5321(b)(1), (b)(2)(A).

Here, the government sufficiently alleges the elements of an FBAR violation. First, the government establishes that Amy and Sam Zimmerman "ha[d] a financial interest in, or signature or authority over," a foreign bank account. Compl. ¶¶ 23–26; see also 31 C.F.R. § 1010.350(a). Specifically, they were authorized representatives on the BSI Account by virtue of being authorized representatives of Makuba. Compl. ¶¶ 23–26. Second, the government alleges that, despite their legal obligation to do so, the Zimmermans failed to file an FBAR reporting the BSI Account for the year 2010. Id. ¶¶ 35–36. Accordingly, on June 6, 2017, the IRS assessed a penalty of $100,000 against both Amy and Sam for that failure. Id. ¶¶ 39, 43. The FBAR penalties were timely because June 6, 2017 was before the deadline of June 30, 2017, see 31 U.S.C. § 5321(b)(1); and, finally, the suit was timely because it was filed within two years of the IRS's assessment, see 31 U.S.C. § 5321(b)(2)(A).

Turning to willfulness, for willful FBAR violations, the penalty may be as high as the greater of (A) $100,000 or (B) 50% of the balance in the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C)(i). (In the absence of a finding of willfulness, the maximum penalty is $10,000, and no penalty may be imposed if there was reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-4912-CAS-Ex | Date | September 16, 2020 |
| Title | UNITED STATES OF AMERICA v. SAM ZIMMERMAN, ET AL. | | |

cause. 31 U.S.C. §§ 5321(a)(5)(B)(i), (ii).) Thus, the $100,000 penalties here are within the statutory limit so long as the violations were willful. See 31 U.S.C. § 5321(a)(5)(C)(i).

Willfulness under Section 5321 "cover[s] not only knowing violations of a standard, but reckless ones as well." Bedrosian v. United States of Am., Dep't of the Treasury, Internal Revenue Serv., 912 F.3d 144, 152 (3d Cir. 2018) (quotation omitted) (applying civil willfulness standard to FBAR violation); see United States v. Bohanec, 263 F. Supp. 3d 881, 890 (C.D. Cal. 2016) (same); United States v. Williams, 489 Fed. Appx. 655, 658 (4th Cir. 2012) (unpublished) (same). "A person 'recklessly' fails to comply with an IRS filing requirement when he or she '(1) clearly ought to have known that (2) there was a grave risk that the filing requirement was not being met and if (3) he or she was in a position to find out for certain very easily.'" Bedrosian, 912 F.3d at 153 (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 68 (2007)) (alterations omitted). Recklessness is an objective standard. Id. (citing Safeco, 551 U.S. at 68). Additionally, some courts have held that "[w]illfulness may be proven through inference from conduct meant to conceal or mislead sources of income or other financial information." Williams, 489 F. App'x at 658 (citing United States v. Sturman, 951 F.2d 1466, 1476 (6th Cir. 1991)). Relevant acts of concealment include redirecting mail regarding the account away from the United States, and using numbered instead of named accounts. See United States v. Ott, 441 F. Supp. 3d 521, 531 (E.D. Mich. 2020) (finding pattern of concealment where defendant directed mail to foreign address); Kimble v. United States, 141 Fed. Cl. 373, 384 (2018) (finding evidence of concealment where "[p]laintiff maintained a numbered account and instructed UBS not to send any account-related correspondence to the United States").

Here, the government argues that the Zimmermans acted willfully because they: (1) knew of the obligation to file an FBAR, (2) knew the BSI Account had nearly $6,000,000 as of January 2010, and (3) engaged in a pattern of concealing the account. Supp. Brief at 5.

The evidence here establishes, at a minimum, recklessness, and therefore willfulness. For one, the Zimmermans controlled the BSI Account. Compl. ¶¶ 24–26. They also knew about the FBAR filing requirement because they filed FBARs in 2006, 2007 and 2009 for the Leumi Account. Compl. ¶¶ 34, 38. Further, a BSI Account statement, dated January 20, 2010, reflects that the account contained $5,786,949 until January 12, 2010. Supp. Brief at 3; Rikke Decl. ¶ 28. These facts establish that, at the least, the Zimmermans ought to have known there was a risk the FBAR filing requirement was not being met, and they were in a position to easily determine whether it would be. See Bedrosian, 912 F.3d at 153.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-4912-CAS-Ex | Date | September 16, 2020 |
| Title | UNITED STATES OF AMERICA v. SAM ZIMMERMAN, ET AL. | | |

Additionally, the government sufficiently establishes that the Zimmermans engaged in a pattern of concealing the BSI Account, from which the Court infers willfulness. For instance, the Zimmermans never filed an FBAR for the BSI Account, and failed to report any income from the account in at least tax years 2008, 2009 and 2010.[5] Supp. Brief at 3; Rikke Decl. ¶¶ 10, 17, 32. The Zimmermans also requested that the account be a numbered account and not identify them by name, and requested that no mail regarding the account be sent to them in the United States. Supp. Brief at 4; Rikke Decl. ¶ 29. Finally, in two separate interviews with the IRS, when asked about their foreign financial interests, the Zimmermans disclosed the Leumi Account, but did not disclose the BSI Account. Supp. Brief at 4; Rikke Decl. ¶¶ 33–34. These facts sufficiently establish a pattern of concealment, and therefore an inference of willfulness.

Taking these allegations as true, the government has established a likelihood of prevailing on the merits of its claim to reduce to judgment the Zimmermans' FBAR penalties. Accordingly, the second and third Eitel factors favor the entry of default judgment against the Zimmermans.

### 3. Sum of Money at Stake in the Action

Pursuant to the fourth Eitel factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." PepsiCo, 238 F. Supp. 2d at 1176; see also Eitel, 782 F.2d at 1471–72. "This determination requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." United States v. Broaster Kitchen, Inc., No. 2:14-cv-09421-MMM-PJW, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015).

The government seeks judgement in the amount of $244,071.24. As of July 29, 2020, this constituted the total outstanding balance of the Zimmermans' liability under 31 U.S.C. § 5321(a)(5), including accrued interest and late-payment penalties provided for by 31 U.S.C. § 3717(e)(2). Because $100,000 is within the statutory limit, see 31 U.S.C. § 5321(a)(5)(C)(i); and statute permits the accrual of interest and penalties, see 31 U.S.C.

---

[5] The government's filings do not establish whether the Zimmermans reported income from the BSI Account in previous years.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'    JS-6

| Case No. | 2:19-cv-4912-CAS-Ex | Date | September 16, 2020 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. SAM ZIMMERMAN, ET AL. | | |

§ 3717(e)(2); the Court concludes that the fourth Eitel factor does not preclude the entry of default judgment against the Zimmermans.

### 4. Possibility of a Dispute Concerning a Material Fact

The fifth Eitel factor considers the possibility that material facts are disputed. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, 238 F. Supp. 2d at 1177. Here, the government has "filed a well-pleaded complaint alleging the facts necessary to establish [its] claims, and the court clerk entered default against" the Zimmermans. See Philip Morris USA, Inc. v. Castworld Prod., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Accordingly, "no dispute has been raised regarding the material averment of the complaint, and the likelihood that any genuine issue may exist is, at best, remote." Id. As such, this factor favors entry of default judgment against the Zimmermans.

### 5. Possibility of Excusable Neglect

The sixth Eitel factor considers whether the defendant's default may have been the product of excusable neglect. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72. "Where a defendant 'is properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion,' there is little possibility of excusable neglect." United States v. Gardner, No. 2:18-CV-03536-CAS-E, 2019 WL 1767120, at *4 (C.D. Cal. Apr. 22, 2019) (quoting Shanghai Automation Instrument Co. Ltd. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001)).

In accordance with Rule 4 of the Federal Rules of Civil Procedure, the government served the summons, complaint and notice to counsel on the Zimmermans on December 4, 2019. See Dkt. 16. Defendants have not filed an answer or otherwise responded. Mot. at 1. The Clerk entered default against both defendants on April 23, 2020. See Dkt. 25. The government served the instant motion for default judgment on both defendants on August 3, 2020. See Dkt. 27 at 31, Proof of Service. Thus, in light of the fact that both Zimmermans were properly served with the summons and complaint, as well as the papers in support of the instant motion, this factor weighs in favor of entering default judgment against defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-4912-CAS-Ex | Date | September 16, 2020 |
| Title | UNITED STATES OF AMERICA v. SAM ZIMMERMAN, ET AL. | | |

### 6. Policy Favoring Decisions on the Merits

Under the seventh Eitel factor, the Court considers the strong policy favoring decisions on the merits. See Eitel, 782 F.2d at 1472. Of course, "this preference, standing alone, is not dispositive." PepsiCo, 238 F. Supp. 2d at 1177 (internal citation omitted). Rule 55(a) permits a court to decide a case before the merits are heard if a defendant fails to defend the suit. Here, defendants' failure to respond to any of the actions in this litigation renders a decision on the merits impractical, if not impossible. Thus, the seventh Eitel factor does not preclude the entry of default judgment. Therefore, weighing all of the Eitel factors, the Court finds that entry of default judgment is appropriate.

### B. Relief Sought by Plaintiff

The government's motion for default judgment seeks a total of $200,000 in FBAR penalties, and $44,071.24 in interest and late-payment penalties through July 29, 2020. Mot. at 4, 9.

### IV. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the government's motion for default judgment, and finds that defendants' conduct was willful.

The Court **ORDERS** that judgment be entered in favor of the government. Defendants Amy and Sam Zimmerman shall be liable to the government in the amount of $244,071.24 for their liability under 31 U.S.C. § 5321(a)(5), including accrued interest and the accrued late-payment penalty provided for by 31 U.S.C. § 3717(e)(2).

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |